## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

OTIS ROBERT HARRIS III,

     *Plaintiff*,

v.                                                                                    Case No. 23-cv-657-ABA

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

     *Defendant*

## MEMORANDUM OPINION

Plaintiff Otis Robert Harris III ("Plaintiff") has brought an employment discrimination action, arguing that he was discriminated against on the basis of his race during his employment at Northrop Grumman Systems Corporation ("Northrop Grumman") when it declined to promote him in 2020 and did not offer him a raise if he were to move to a different position in San Diego. Northrop Grumman has filed a motion for summary judgment. For the foregoing reasons, the undisputed evidence establishes that Northrop Grumman acted for legitimate and non-discriminatory reasons. Accordingly, the motion for summary judgment will be granted.

## I.    MATERIAL UNDISPUTED FACTS

Because Northrop Grumman has moved for summary judgment, the Court recites the facts in the light most favorable to Plaintiff. *See Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). The following facts are undisputed.

Plaintiff has worked as an electrical engineering professional since 1999. ECF No.

40-1 at 1 ¶ 3.[1] On November 17, 2014, Plaintiff began working at Northrop Grumman as a Level 4 Radio Frequency Microwave Design Engineer, with a starting salary of $118,000. ECF No. 37-13 at 2. Northrop Grumman is a publicly traded global technology and security company, ECF No. 37-2 at 1 ¶ 2, with policies prohibiting workplace discrimination and retaliation. ECF Nos. 37-11 & 37-12. Between 2014 and 2018, Plaintiff received multiple raises and promotions, and by November 2018 he held the title of Senior Principal Chief Engineer and earned approximately $133,449 annually. ECF No. 37-14 at 2.

At Northrop Grumman, employee salaries are based on two factors: (1) performance; and (2) "Compa" ratio, which is the employee's salary relative to the industry median for the employee's role and pay level. ECF No. 37-2 at 2 ¶ 10 − 3 ¶ 12. Pay levels are determined using industry-wide surveys conducted by Northrop Grumman's Compensation and Benefits department. *Id.* at 3 ¶ 12. Employees receive annual merit increases, with higher raises available to those with lower Compa ratios (*i.e.*, employees with lower salaries relative to the industry median) and stronger performance ratings. *Id.* at 3 ¶ 13. Based on his performance rating and compensation level, Plaintiff's base salary was increased to $136,117.60 as of March 2, 2019. *Id.* at 3 ¶ 14; ECF No. 37-14 at 2.

In mid-2018, Steve Eason became Plaintiff's manager and rated him a "Successful Performer" for 2018, which is the most common rating at Northrop Grumman, received by approximately 60% of the employees. ECF No. 37-15 at 6; ECF

---

[1] Citations to page numbers refer to the number appearing in the CM/ECF header for this and the other filings referenced herein, which may not align with a document's original page numbering.

No. 37-2 at 2 ¶ 6, 9. "Successful Performer" is the second-to-bottom rating; the scale
(from bottom to top) is "Inconsistent Performer," "Successful Performer," "Excellent
Performer," and "Top Performer." *Id*. at 2 ¶ 9. Mr. Eason and Plaintiff regularly met to
discuss Plaintiff's career goals, leadership development, and communication skills. ECF
No. 37-6 at 39 ¶ 9 – 40 ¶ 24. In his 2018 Year-End Review, Mr. Eason encouraged
Plaintiff to improve collaboration and communication with team members and to
broaden his responsibilities. ECF No. 37-15. Mr. Eason specifically recommended that
Plaintiff consider a new role within the department to take on greater responsibilities for
cost schedules and technical duties on certain projects. *Id*. at 2.

In January 2019, Plaintiff applied for the Programs Level 2 Manager position on
Northrop Grumman's Joint Counter Radio-Controlled Improvised Explosive Device
Warfare ("JCREW") program in San Diego, California. ECF No. 37-16. Out of sixty-two
applicants, Plaintiff received an offer on May 6, 2019, with a proposed salary of
$144,484.66 and a $50,000 relocation stipend. ECF No. 37-17; ECF No. 37-18. After
Plaintiff declined the offer, Northrop Grumman extended it to a white candidate at a
lower salary than it had offered Plaintiff. ECF No. 37-18; ECF No. 37-19 (offering
$130,000 as a starting salary).

In August 2019, Mr. Eason transferred Plaintiff to a business unit under
Engineering Program Manager Dave Gill to provide Plaintiff with more leadership
opportunities. ECF No. 37-14; ECF No. 37-2 at 3 ¶ 15; ECF No. 37-3 at 1 ¶ 4 – 2 ¶ 5. Both
Mr. Eason and Mr. Gill believed the transfer would give Plaintiff the opportunity to
expand his skill set, take on additional responsibilities, and gain leadership experience.
ECF No. 37-2 at 3 ¶ 17; ECF No. 37-3 at 1 ¶ 4 – 2 ¶ 5. Following the transfer, Plaintiff's
responsibilities increased and included oversight of a larger product area, leading

weekly status meetings, calculating monthly project estimates, and managing planning and scheduling tasks. ECF No. 37-20; ECF No. 37-3 at 1 ¶ 2 – 2 ¶ 5. In his 2019 Year-End Review, Mr. Gill advised Plaintiff to further develop his budget management, organizational, follow-through, and communication skills. ECF No. 37-20; ECF No. 37-3 at 2 ¶ 12. Plaintiff was also rated a "Successful Performer" for his 2019 performance review. ECF No. 37-20 at 2.

In 2020, Mr. Gill awarded Plaintiff a 2.5% merit compensation increase, the standard allocation suggested by the merit system at the time, increasing his compensation to $139,520.54. ECF No. 37-22; ECF No. 37-3 at 3 ¶¶ 16-20. Plaintiff remained the highest-paid Senior Principal Chief Engineer on Mr. Gill's team. ECF No. 37-22. On January 20, 2020, Plaintiff applied for a Programs Level 2 Manager position in Northrop Grumman's Surveillance and Electromagnetic Maneuver Warfare business unit. ECF No. 37-4 at 1 ¶ 2. Tim Eggborn, the Director of Programs, served as the hiring manager. *Id.* Out of 43 applicants, Plaintiff and six others, including William Cramer, were interviewed. *Id.* at 1 ¶ 2 – 2 ¶ 6. Mr. Eggborn selected Mr. Cramer for the role based on his direct knowledge of Mr. Cramer's work, and Mr. Cramer's familiarity with the unit's operations and his relevant technical background. *Id.* at 2 ¶¶ 7–9. Mr. Eggborn concluded that Plaintiff lacked the specific experience and technical expertise necessary to make timely and informed programmatic decisions in the position. *Id.* at 2 ¶ 9, 12.

On June 11, 2020, Plaintiff submitted his voluntary resignation from Northrop Grumman without providing advance notice. ECF No. 37-27. Within approximately one week, he began employment at Raytheon with an annual salary of $156,000. ECF No. 37-6 at 7 ¶ 5 – 8 ¶ 3. Plaintiff applied for reemployment at Northrop Grumman on April

2, 2024 (13 months after filing the complaint in this case), seeking the position of

Manager of Systems Engineering. ECF No. 37-28 at 5; ECF No. 42-1 ¶ 42.

## II.    PROCEDURAL HISTORY

Plaintiff filed this case on March 9, 2023. ECF No. 1. Plaintiff filed a second

amended complaint on November 16, 2023, which asserts two sets of claims: (1) race

discrimination based on disparate treatment, and hostile work environment under Title

VII of the Civil Rights Act of 1964, and (2) race discrimination based on disparate

treatment, and hostile work environment under 42 U.S.C. § 1981. ECF No. 13. After the

close of discovery, Northrop Grumman filed a timely motion for summary judgment.

ECF No. 37. Plaintiff filed a brief in opposition, ECF No. 42, and Northrop Grumman

replied, ECF No. 45.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A moving party meets its burden when the nonmovant "fails to make a showing

sufficient to establish the existence of an element essential to that party's case" and

when the nonmovant bears "the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with

"sufficient evidence . . . for a jury to return a verdict for that party," the movant is

entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986); *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.");

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 ("When the

moving party has carried its burden under Rule 56(c), its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts."). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.

## IV.    DISCUSSION

### A.    Race Discrimination Claims

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). And the Civil Rights Act of 1866 similarly protects individuals from being discriminated against on the basis of their race by guaranteeing, among other things, "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

At the summary judgment stage, Section 1981 and Title VII claims both are analyzed under the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for determining whether a plaintiff has established circumstantial evidence of race discrimination. *See Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (applying the *McDonnell Douglas* framework to a Section 1981 race discrimination claim). Here, because Plaintiff relies solely on circumstantial, rather than direct, evidence of discrimination, the *McDonnell Douglas* framework applies. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Murrell v. The Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001).

Under that framework, Plaintiff must first establish a *prima facie* case of

employment discrimination on the basis of race by presenting evidence that: (1) he is a member of a protected group; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of unlawful discrimination. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). On the specific claim that he was denied a promotion because of his race, Plaintiff must first present evidence of a prima facie case of discrimination that "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).

If Plaintiff comes forward with evidence sufficient to make out a prima facie case of discrimination, the burden shifts to Northrop Grumman to respond by "producing a legitimate nondiscriminatory reason for its decision." *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 644–45 (4th Cir. 2002). If Northrop Grumman makes this showing, Plaintiff "must then present evidence to prove that [Northrop Grumman's] articulated reason was pretext for unlawful discrimination." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

As to the remaining live claims regarding Northrop Grumman's decision not to promote Plaintiff in 2020 and Northrop Grumman's offer terms for Plaintiff's promotion and move to San Diego in 2019, Northrop Grumman argues it is entitled to summary judgment because: (1) Plaintiff has failed to establish a prima facie case of race

discrimination; (2) Northrop Grumman had legitimate, non-discriminatory reasons for its decisions; and (3) Plaintiff has provided no evidence that Northrop Grumman's legitimate, non-discriminatory reasons were pretextual. Because the Court agrees that Northrop Grumman had legitimate, non-discriminatory reasons and there is no evidence from which a reasonable jury could conclude that these reasons were pretextual, the Court will assume (without deciding) that Plaintiff has established a prima facie case of race discrimination as to both claims.

### i.    2020 Program Manager 2 Position

The undisputed evidence presented shows that Mr. Cramer was a highly qualified individual who worked directly under Mr. Eggborn and held impressive credentials, and Plaintiff does not provide evidence suggesting that these legitimate, non-discriminatory reasons to hire Mr. Cramer over Plaintiff were pretextual in any way. The evidence includes: (1) that Mr. Cramer held a graduate degree and had thirteen years of experience as an engineer, ECF No. 37-26 at 2; (2) that Mr. Eggborn personally observed Mr. Cramer's performance during the months that Mr. Cramer worked in Mr. Eggborn's unit, ECF No. 37-4 at 2; (3) that Mr. Eggborn felt, based on his observations of Mr. Cramer, that Mr. Cramer had the best familiarity with the unit as well as the specific technical background that the role requires, *id.*; and (4) Plaintiff had never worked for Mr. Eggborn, ECF No. 37-6 at 50.

These reasons alone provide undisputed evidence of legitimate, non-discriminatory bases for Mr. Eggborn to have made the decision to promote Mr. Cramer over Plaintiff, and Plaintiff has failed to provide any evidence to the contrary that would tend to show that Mr. Eggborn's decision was pretextual or motivated by Plaintiff's race.

###### ii.    2019 Program Manager 2 Position

As to Plaintiff's claim that Northrop Grumman discriminated against him by not offering him a salary increase or relocation bonus, as an initial matter Plaintiff has failed to show how this constitutes an "adverse employment action" as required to make out a Title VII or section 1981 discrimination claim. *See, e.g.*, *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 133-34 (2d Cir. 2015) (holding that a denial of a discretionary raise "can never constitute an actionable adverse employment action"); *Nasserizafar v. Indiana Dep't of Transp.*, 546 F. App'x 572, 575 (7th Cir. 2013) (same); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (defining an actionable adverse employment action as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment significantly different responsibilities, or a decision causing a significant change in benefits"); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024) ("To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment.").

But even if not offering Plaintiff a raise constituted an adverse employment action, the undisputed evidence establishes that Plaintiff was offered a promotion and raise if he were to have accepted this position, along with a relocation allowance of $50,000 and a salary for the new position of approximately $144,285, which would have entailed a $6,000 raise. ECF No. 37-17 at 2. It is also undisputed that, when Plaintiff turned down the offer, Northrop Grumman offered the role to a white employee for a lower salary of $130,000. ECF No. 37-19 at 2. Plaintiff has not come forward with any evidence from which a reasonable jury could conclude that Northrop Grumman's decision to offer him a salary of $144,284.66 (plus a $50,000 relocation stipend) for

that position was either an adverse employment action or was motivated by his race.

**B.    Hostile Work Environment Claims**

To prevail on a racially hostile work environment claim under Title VII and Section 1981, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)). A viable hostile work environment claim often involves repeated conduct. *Id.*; *see also Roesinger v. Pohanka of Salisbury, Inc.*, No. 21-1617, 2024 WL 701776, at *3 (4th Cir. Feb. 21, 2024) (holding that sporadic uses and few incidents of demeaning or belittling language are not so severe or pervasive to implicate Title VII).

Plaintiff's claim that he was subjected to a hostile work environment on the basis of his race fails because Plaintiff has failed to present evidence to satisfy the "high" bar that the Fourth Circuit requires. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). Plaintiff asserts that he was subjected to a hostile work environment that "included minimal raises each year despite meeting expectations evaluations each year; refusal to support a promotion while promoting white men; denial of an increase in salary to move to San Diego from Baltimore; and denial of a Manager position which was offered to a white male who had only worked for Northrop for a few months." ECF No. 42 at 25. These allegations, even if they were supported by admissible evidence, do not rise to the level necessary to support a hostile work environment claim.

## V.    CONCLUSION

For these reasons, there is no genuine dispute as to any material fact that would entitle Plaintiff to proceed with his claims. Accordingly, the Court will grant summary judgment in favor of Defendant Northrop Grumman. A separate order follows.


Date:  August 29, 2025                          _____/s/_____

                                                Adam B. Abelson
                                                United States District Judge